UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENKY VENKATRAMAN,<br>Plaintiff,<br>-v.-<br>SAKSHI VENKATRAMAN and SMRITHI VENKATRAMAN,<br>Defendants. | 25 Civ. 8848 (KPF)<br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Federal courts are no place for (one-sided) family feuds. Plaintiff Venky Venkatraman, a New York-barred attorney proceeding *pro se*, begs to differ, bringing claims for defamation and intentional infliction of emotional distress against his estranged adult daughters, Sakshi Venkatraman and Smrithi Venkatraman (respectively, "Sakshi" and "Smrithi," and collectively, "Defendants"), who are also proceeding *pro se.*[1] In the latest of a series of lawsuits brought against or involving his daughters, Plaintiff alleges that he was defamed by an online article about Sakshi's journalism career, which article included background context that Sakshi's "family struggled financially"

[1] The Court notes that "pro se attorneys are not entitled to the special solicitude that courts traditionally afford to pro se litigants." *Knopf* v. *Esposito*, 803 F. App'x 448, 454 n.2 (2d Cir. 2020) (summary order) (first citing *Tracy* v. *Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); and then citing *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (finding that *pro se* attorneys typically cannot claim the special consideration that courts customarily grant *pro se* parties)). Accordingly, Plaintiff's pleadings are held to the same standards as pleadings drafted by lawyers. *See Gorawara* v. *Caprio*, No. 24-17-cv, 2025 WL 1571762, at *3 n.1 (2d Cir. June 4, 2025) (summary order) (citation omitted). By contrast, the submissions of Defendants, who are also proceeding *pro se*, are reviewed with solicitude.

and that "a significant elder in her family was abusive towards them." (First Amended Complaint ("FAC" (Dkt. #34) ¶ 11)).

Defendants now move to dismiss the FAC for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and, in the alternative, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, Smrithi moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). More broadly, Defendants request an order declaring Plaintiff to be a vexatious litigant and an injunction permanently enjoining and restraining Plaintiff from filing any civil action against Defendants without prior judicial approval. For the reasons that follow, the Court grants Defendants' motion to dismiss and denies Defendants' request for a filing injunction.

## BACKGROUND[2]

### A. Factual Background

Plaintiff is Defendants' father. (FAC ¶ 8). Plaintiff is "a citizen of the State of Texas." (*Id.* ¶ 1). Defendant Sakshi Venkatraman "is a citizen of the

---

2 This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #34)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also relies, as appropriate, on certain of the exhibits attached to the Declaration of Venky Venkatraman ("Pl. Decl., Ex. [ ]" (Dkt. #37-1)), which exhibits include documents that are either publicly available or incorporated by reference in the FAC. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court also considers matters of public record,

State of New York." (*Id.* ¶ 2). Defendant Smrithi Venkatraman "is a citizen of the State of New Jersey." (*Id.* ¶ 3).

The Court takes judicial notice that Plaintiff, although appearing *pro se*, has been admitted to practice law in New York since 2021. *See Attorney Directory*, N.Y. State Unified Ct. Sys., [https://iapps.courts.state.ny.us/attorneyservices/details?3](https://iapps.courts.state.ny.us/attorneyservices/details?3) [https://perma.cc/2ZUR-5GP2] (last visited Nov. 2, 2026) (Plaintiff's Registration Number is 5856695). The Court takes further notice that Plaintiff was denied admission to the Texas Bar by the Texas Board of Law Examiners, with any future admission redetermination conditioned on "satisfactory resolution of any and all judgments against [Plaintiff], including child support arrearage amounts and resolution of child support litigation." *Venkatraman* v. *Tex. Bd. of L. Examiners*, No. 22 Civ. 519, 2024 WL 2787271, at *2, *6 n.8 (Tex. App.-Austin May 31, 2024) (observing that Plaintiff owed "a child-support arrearage of $34,862.39, a $20,000 judgment to his ex-wife's counsel for attorney's fees, and court costs for at least three appellate matters and one trial-court matter involving his divorce and child-support litigation" at the time of the hearing), *review denied* (Jan. 24, 2025). Finally, the Court

---

such as state and federal court lawsuits. *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Blue Tree Hotels Inv. (Canada), Ltd.* v. *Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (holding that a court may consider public records, such as complaints filed in state court, in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #35); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt #37); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #38).

notes Plaintiff's extensive litigation history against and/or involving Defendants. *See, e.g.*, *Venkatraman* v. *Venkatraman*, No. 25 Civ. 1335 (X) (BN), 2025 WL 1886736, at *4 (N.D. Tex. June 5, 2025) (recommending dismissal *sua sponte* of substantially similar claims made by Plaintiff against Defendants for want of subject matter jurisdiction), *report and recommendation adopted*, 2025 WL 1885645 (N.D. Tex. July 7, 2025); *Venkatraman* v. *Venkatraman*, No. DC-24-4392 (14th Dist. Ct., Dallas County, Tex. Feb. 10, 2025) (Pl. Decl., Ex. B) (granting Plaintiff's "request to Nonsuit" defamation lawsuit against Defendants); *In re S.V.*, No. 19 Civ. 548, 2022 WL 696815, at *1 n.3 (Tex. App.-Dallas Mar. 8, 2022) (listing fourteen previous denials of mandamus relief sought by Plaintiff in his "high-conflict [child] custody case" involving Defendants).

Plaintiff's current claims derive from a July 13, 2023 Medium article titled, "How the challenges of childhood influenced Sakshi Venkatraman to be a journalist." Arundhati Kumar, Medium (July 13, 2023), https://medium.com/@kumar.arundhati56/how-the-challenges-of-childhood-influenced-sakshi-venkatraman-to-be-a-journalist-2ad978c31582 [https://perma.cc/2MV3-YTG8] (last visited Nov. 2, 2026). While the article primarily describes Sakshi's career as a journalist, it begins by explaining Sakshi's family background, stating that "[h]er family struggled financially, and a significant elder in her family was abusive towards them." *Id.* (the "Medium Statement").[3]

[3] While the FAC asserts that the article's "author wrote, among other things, that Sakshi 'grew up in a dysfunctional and abusive household'" (FAC ¶ 11), the article does not include the quoted language. *See* Arundhati Kumar, *How the challenges of childhood*

From this observation — the only ostensibly defamatory statement specified in the FAC — Plaintiff alleges that "[b]eginning no later than 2023, Defendants made, caused to be made, endorsed, repeated, and/or adopted false statements and false implications concerning Plaintiff, including accusations that Plaintiff abused Defendants, abused Defendants' mother, failed to pay child support, and caused the family to struggle financially." (FAC ¶ 9; *see also id.* ¶ 18 ("Upon information and belief, from 2025 through the present, one or both Defendants have continued to repeat, endorse, adopt, or communicate to third parties the same or substantially similar false accusations or implications concerning Plaintiff, including accusations or implications that Plaintiff abused Defendants, abused Defendants' mother, failed to pay child support, or caused the family to suffer financially.")).[4] Tellingly, Plaintiff concedes that he cannot identify any "statements [(other than the July 13, 2023 Medium article)] by exact date, recipient, or medium" because "Defendants have avoided direct contact with Plaintiff." (*Id.* ¶ 19). He

*influenced Sakshi Venkatraman to be a journalist*, Medium (July 13, 2023), https://medium.com/@kumar.arundhati56/how-the-challenges-of-childhood-influenced-sakshi-venkatraman-to-be-a-journalist-2ad978c31582 [https://perma.cc/2MV3-YTG8] (last visited Nov. 2, 2026). Accordingly, the Court does not find this allegation well-pleaded. *See 380544 Canada, Inc.* v. *Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008) ("Where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls.").

[4] It is not clear what role Smrithi had in either the Medium Statement allegations or the non-Medium Statement allegations. Smrithi is not mentioned in the article, and the only specific references to her conduct in the FAC are in relation to Plaintiff's personal jurisdiction arguments. (*See* FAC ¶ 7 (arguing that the Court has personal jurisdiction over Smrithi, who is allegedly a citizen of New Jersey, because she "was physically present in New York during relevant periods in which the tortious conduct alleged herein occurred and participated in conduct directed into New York," and her "alleged defamatory and tortious conduct was purposefully directed toward New York and caused injury connected to this forum")).

nevertheless maintains that Defendants perpetuated a "stigmatizing narrative" about him. (*See* Pl. Opp. 6).

To support his contention that the Medium Statement refers to himself, Plaintiff asserts that Sakshi "admitted in discovery that the [Medium] article referred to Plaintiff." (FAC ¶ 13). To this point, Plaintiff submitted a declaration alongside his opposition to Defendants' motion to dismiss with an exhibit containing the alleged admission — "Defendants' Response to Plaintiff's Second Request for Admissions" (the "RFAs"), a discovery document from a previous defamation lawsuit against Defendants and their mother, Jyoti Masurekar. (*See* Pl. Decl., Ex. A ¶¶ 16-17). The RFAs also seek admissions from Defendants on issues including whether: (i) Sakshi worked remotely from her mother's residence (*id.* ¶¶ 1-3); (ii) "it [wa]s [Sakshi's] belief as a nearly 26 year old woman, that a child should reject a parent forever if that parent had slapped her as a child ONCE even if that action did not result in any injury" (*id.* ¶ 10 (emphasis in original)); (iii) Sakshi was "unwilling to unblock" Plaintiff's Facebook and Twitter accounts and cell phone number (*id.* ¶¶ 12-14); and (iv) "despite the fact that [Plaintiff] has added [Sakshi] to the Defamation suit against [Ms. Masurekar], you believe that he still loves you as his biological daughter" (*id.* ¶ 28).

As a result of the Medium Statement and Defendants' alleged "defamatory narrative" (Pl. Opp. 4), Plaintiff claims "damage to his personal and professional reputation, humiliation, mental anguish, severe emotional

distress, and disruption of familial relationships" amounting to "not less than $250,000." (FAC ¶¶ 21, 30).

**B. Procedural Background**

Plaintiff commenced this action on October 27, 2025. (Dkt. #1). As relevant here, Plaintiff purported to serve Smrithi Venkatraman on January 12, 2026, by leaving "the summons at [Smrithi's] usual place of business with Chanel G, Co-worker / Admin Coordinator." (Dkt. #13). The operative FAC was filed on April 20, 2026, and alleges defamation (Count I) and intentional infliction of emotional distress (Count II). (Dkt. #34). Defendants moved to dismiss the FAC on May 20, 2026. (Dkt. #35-36). Plaintiff submitted his opposition on June 27, 2026. (Dkt. #37). Defendants replied on July 20, 2026. (Dkt. #38).

**DISCUSSION**

**A. Applicable Law**

**1. Federal Rule of Civil Procedure 12(b)(1)**

Defendants invoke several subsections of Rule 12(b) of the Federal Rules of Civil Procedure, and to contextualize its legal analysis, the Court presents the standards for each in this section. Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v.

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain*, 838 F.3d at 134 (quoting *Makarova*, 201 F.3d at 113).

**2. Federal Rule of Civil Procedure 12(b)(2)**

When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal

conclusion couched as a factual allegation[.]" *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding motions to dismiss for lack of personal jurisdiction typically engage in a two-part analysis. *First*, the court assesses whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this determination, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citations omitted). *Second*, if there is a statutory basis for personal jurisdiction, the court must decide whether the exercise of jurisdiction comports with due process. *See Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224-25 (2d Cir. 2014) (per curiam).

**3. Federal Rule of Civil Procedure 12(b)(5)**

Federal Rule of Civil Procedure 12(b)(5) governs service of process. Under Rule 12(b)(5), "[o]nce a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Darden* v. *DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). And "[w]hen a court considers a motion to dismiss pursuant to Rule 12(b)(5), it must consider information outside the complaint to determine whether service was sufficient." *Hernandez* v. *Mauzone Home*

*Kosher Prods. of Queens, Inc.*, No. 12 Civ. 2327 (SJ) (JMA), 2013 WL 5460196, at *4 (E.D.N.Y. Sept. 30, 2013).

**4. Federal Rule of Civil Procedure 12(b)(6)**

Finally, to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A complaint that contains only "naked assertion[s]" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Twombly*, 550 U.S. at 555, 557. The Court must accept as true all well-pleaded factual allegations in the complaint. *See Iqbal*, 556 U.S. at 678.

In making Rule 12(b)(6) determinations, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). A court may also consider

"matters as to which judicial notice may be taken, such as pleadings in other lawsuits and other public records[.]" *Rosado-Acha* v. *Red Bull Gmbh*, No. 15 Civ. 7620 (KPF), 2016 WL 3636672, at *6 (S.D.N.Y. June 29, 2016) (quoting *Agron* v. *Douglas W. Dunham, Esq. & Assocs.*, No. 02 Civ. 10071 (LAP), 2004 WL 691682, at *2 (S.D.N.Y. Mar. 31, 2004)); *see also Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)."). More specifically, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou* v. *Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012) (quotation omitted); *see also Rothman* v. *Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit). The Court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation. *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

## B. Analysis[5]

### 1. The Court Grants Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Plaintiff asserts that this Court has diversity-based subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). (FAC ¶ 4). Diversity jurisdiction requires that the parties are completely diverse (*i.e.*, no plaintiff is a citizen of the same state as any defendant) and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). While Defendants concede that the parties are diverse, they claim that Plaintiff "has failed to plausibly allege facts that suggest" that the amount in controversy requirement has been met. (*See* Def. Br. 6).

To satisfy this requirement, a plaintiff must demonstrate to a "reasonable probability that the amount in controversy exceeds $75,000." *See Smulley* v. *Safeco Ins. Co. of Ill.*, No. 21-2124-cv, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (summary order). "This burden is hardly onerous, however," because

---

5 In general, "[f]ederal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." *Rothstein* v. *City of New York*, No. 09 Civ. 5888 (LTS) (HBP), 2011 WL 3296205, at *5 n.8 (S.D.N.Y. June 15, 2011) (quoting *Rocchigiani* v. *World Boxing Council, Inc.*, 131 F. Supp. 2d 527, 530 n.5 (S.D.N.Y. 2001)), *report and recommendation adopted*, 2011 WL 3273473 (S.D.N.Y. July 29, 2011). However, "where the parties agree that New York law controls, this is sufficient to establish choice of law." *Fed. Ins. Co.* v. *Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

The parties' briefing assumes that New York law controls Plaintiff's claims. (*See generally* Def. Br.; Pl. Opp.). Courts have held that "such implied consent is sufficient to establish choice of law." *MIG, Inc.* v. *Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010) (internal citations and modifications omitted) (quoting *Motorola Credit Corp.* v. *Uzan,* 388 F.3d 39, 61 (2d Cir. 2004)), *aff'd*, 410 F. App'x 408 (2d Cir. 2011) (summary order). Accordingly, the Court will analyze Plaintiff's claims under New York law.

courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer* v. *Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted). To overcome this presumption, the court must find "to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Id.* (citation and internal quotation marks omitted). In this regard, "where a complaint does not contain facts plausibly suggesting that the amount in controversy meets the jurisdictional minimum, the Court is not required to presume that the bare allegations in the complaint are a good faith representation of the actual amount in controversy." *Patel* v. *Patel*, No. 23 Civ. 8765 (LTS), 2024 WL 37094, at *2 (S.D.N.Y. Jan. 3, 2024) (citation omitted); *see, e.g.*, *Weir* v. *Cenlar FSB*, No. 16 Civ. 8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (citing *Wood* v. *Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013) (summary order) (affirming dismissal of a complaint for lack of subject matter jurisdiction where plaintiff's allegations regarding amount in controversy were "conclusory and not entitled to a presumption of truth")). The burden to establish the amount in controversy is on the party asserting jurisdiction. *Turban* v. *Bar Giacosa Corp.*, No. 19 Civ 1138 (JMF), 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019) (citing *Tongkook Am., Inc.* v. *Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).

Although a high bar, the "legal certainty" test is met where the complaint contains only "bald assertions" regarding damages, leaving the Court without "sufficient facts or information to conclude with any degree of certainty that the

jurisdictional amount has been met." *Styleline Studios Int'l Ltd.* v. *Litvack*, No. 24 Civ. 1192 (OEM) (JMW), 2025 WL 2306738, at *6 (E.D.N.Y. Apr. 22, 2025), *report and recommendation adopted*, 2025 WL 2092288 (E.D.N.Y. July 25, 2025); *see, e.g.*, *Patel*, 2024 WL 37094, at *3 (finding that while plaintiff claimed "many hundreds of millions of dollars for alleged damage to his reputation and for pain and suffering," he did not allege "any facts showing damages to his reputation or any manifestations of damage to his reputation or his mental health"); *Turban*, 2019 WL 3495947, at *2 (finding conclusory pleading that damages exceeded $75,000 insufficient where "the allegation [wa]s not plausibly supported by any of the other factual allegations").

In *Styleline*, the plaintiff made only the conclusory allegation that "the [allegedly defamatory] statements harmed 'his trade, business, and profession,' resulting in 'injur[ies] to his reputation in his trade and business.'" 2025 WL 2306738, at *6. While acknowledging that the plaintiff's burden was not heavy, the court nonetheless found that meeting that burden required allegations that "pinpointed examples of monetary loss," which the plaintiff failed to do. *Id.* (first citing *Subotovsky* v. *White*, No. 24 Civ. 1549 (AS), 2025 WL 641389, at *2 (S.D.N.Y. Feb. 27, 2025) (alleging that projects "worth tens of millions of dollars" were allegedly cancelled); and then citing *LaNasa* v. *Stiene*, 731 F. Supp. 3d 403, 413–14 (E.D.N.Y. 2024) (because of the alleged defamation, plaintiff's family had to seek therapy, a tour with plaintiff was cancelled, and plaintiff was "spurned" by creators, publishers, and other artists), *aff'd*, No. 24-1325-cv, 2025 WL 893456 (2d Cir. Mar. 24, 2025)

(summary order)); *cf. Qureshi* v. *St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 281 n.1 (S.D.N.Y. 2006) (finding jurisdictional amount met where plaintiff alleged that defendants' defamation rendered her unable to obtain employment as a medical doctor, despite the "difficulty and inherent uncertainty in calculating the value of a professional career").

As such, courts routinely dismiss actions for want of subject matter jurisdiction where the plaintiff makes only conclusory assertions that he sustained emotional and/or reputational damages (*i.e.*, without describing the alleged underlying losses). *See, e.g.*, *Zorrilla* v. *YouTube*, No. 24 Civ. 2487 (LTS), 2024 WL 4635501, at *2 (S.D.N.Y. Oct. 28, 2024) (noting that plaintiff failed to "allege any facts describing the losses he incurred"); *Van Arsdol* v. *Charles*, No. 25 Civ. 4806 (NRM), 2025 WL 2987498, at *2 (E.D.N.Y. Oct. 23, 2025) (observing that plaintiff did "not provide[] any specific allegations about the damages he suffered as a result of the [d]efendant's actions that would allow this Court to reasonably infer that such damages might exceed $75,000"); *Bailon* v. *Pollen Presents*, No. 22 Civ. 6054 (KPF), 2023 WL 5956141, at *11-12 (S.D.N.Y. Sept. 13, 2023) (concluding that "[p]laintiff must provide specific information concerning 'the nature and extent of [p]laintiff's injuries, the treatment received, or details regarding the other losses she purportedly suffered,' in order to provide the Court with reasonable certainty that" alleged emotional distress damages meet amount in controversy requirement (quoting *Efeturk* v. *Amazon.com Servs., LLC*, No. 23 Civ. 2861 (DLI), 2023 WL 3203914, at *2 (E.D.N.Y. May 2, 2023))). Said another way, federal diversity jurisdiction

does not lie where the plaintiff only offers "boilerplate" allegations that "he suffered damages, including damage to reputation, emotional distress, and other harm," from defamation, even if the plaintiff claims that such damages exceed $75,000. *See Levitan* v. *Gilead Scis., Inc.*, No. 25 Civ. 393 (AMD), 2025 WL 2782407, at *13 (E.D.N.Y. Sept. 30, 2025) (concluding that removal premised on diversity jurisdiction was inappropriate) (citations and internal quotation marks omitted).

Plaintiff's allegations fail to meet this burden, inasmuch as they include only conclusory assertions that the amount in controversy requirement is met without providing any facts that support those contentions. (*See, e.g.*, FAC ¶¶ 4, 21, 29-30, 36). While Plaintiff claims that he "has suffered reputational harm, humiliation, mental anguish, and damages in an amount to be determined at trial, but not less than $250,000" (*id.* ¶ 30), the FAC is utterly devoid of allegations that might support that contention, such as identifying lost clients or mental health treatment expenses incurred because of the alleged defamatory conduct. *See Patel*, 2024 WL 37094, at *3. Indeed, the FAC makes no claim whatsoever that the alleged defamation impacted Plaintiff's legal career, claiming damages to his "professional reputation" without reference to his underlying profession. (*See* FAC ¶ 21). Nor does the FAC include other factual allegations that might allow the Court to infer that the jurisdictional amount is met — for example, quantifying the Medium Statement's audience — making any damages assessment speculative on the pleaded facts. *See Turban*, 2019 WL 3495947, at *2-3.

In response, Plaintiff can only double down on conclusory assertions, arguing that the FAC "alleges that Plaintiff seeks recovery for reputational injury, emotional distress, and punitive damages arising from false accusations that he abused Defendants, abused Defendants' mother, failed to pay child support, and caused the family to struggle financially." (Pl. Opp. 3). As stated above, Plaintiff has made no effort to illustrate *any* of these alleged damages — he does not claim that his legal career has been impacted or that he has incurred costs because of his emotional distress (*e.g.*, therapy bills), instead simply asserting that his reputation and emotions have been harmed without describing concrete or quantifiable manifestations of that harm. While the Court agrees with Plaintiff that he need not "itemize" his damages (*id.*), and does not doubt that Plaintiff's feelings have been hurt, federal jurisdiction requires more.

That said, this Court's lack of subject matter jurisdiction should come as no surprise to Plaintiff, both because of his legal training and because his previous attempt at pursuing these claims in federal court was dismissed *sua sponte* for lack of subject matter jurisdiction. *See Venkatraman*, 2025 WL 1886736, at *4. Possessing only Plaintiff's conclusory allegations, the Court grants Defendants' motion to dismiss for want of subject matter jurisdiction.

### 2. In Any Case, the Court Lacks Personal Jurisdiction over Smrithi

Notwithstanding that the claims against Sakshi and Smrithi must be dismissed under Rule 12(b)(1), the claims against Smrithi also fail for the independent reason that the Court lacks personal jurisdiction over Smrithi.

Personal jurisdiction here is based on New York's long-arm statute, N.Y. C.P.L.R. §§ 301-302. *See Shteierman* v. *Fisher*, No. 24 Civ. 3978 (KMK), 2026 WL 867139, at *5 (S.D.N.Y. Mar. 27, 2026) (citations omitted). Section 301 governs the exercise of general personal jurisdiction, while Section 302 governs the exercise of specific personal jurisdiction. *Id.* Plaintiff does not argue that Smrithi is subject to the Court's personal jurisdiction under Section 301, instead arguing for specific personal jurisdiction under Section 302. (*See* Pl. Opp. 3-4 ("The Amended Complaint alleges, upon information and belief, that Smrithi participated in and/or directed relevant conduct into New York, was physically present in New York during relevant periods, and caused injury connected to this forum.")).

As a starting point, Section 302 "expressly exempts defamation claims from most of its provisions." *Satanic Temple, Inc.* v. *Newsweek Digital LLC*, 177 F.4th 202, 208 (2d Cir. 2026); *see* N.Y. C.P.L.R. §§ 302(a)(2)-(3) (each expressly excluding "a cause of action for defamation"). And "[w]here allegedly defamatory statements supply the sole basis for liability," as is true here,[6] Section 302 "does not confer personal jurisdiction, regardless of how the claims are styled." *Aprahamian* v. *Sandoz, Inc.*, No. 24 Civ. 9045 (NSR), 2026 WL 221286, at *5 (S.D.N.Y. Jan. 28, 2026) (citations omitted); *see Shamoun* v. *Mushlin,* No. 12 Civ. 3541 (AJN), 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (rejecting plaintiffs' attempt to "evade the [CPLR's] express exception for

6 *See* Discussion § B.3.b *infra.*

defamation actions… by asserting other tort claims, including intentional infliction of emotional distress … based on allegations that the [d]efendants published false claims about [p]laintiffs online").

Further, Plaintiff does not argue that the non-exempted provisions apply, nor does the FAC make allegations that would support specific jurisdiction pursuant to those provisions. Of those provisions, Section 302(a)(1) provides specific jurisdiction "over a non-domiciliary who 'transacts any business within the state' where the cause of action 'arises from' that transaction." *See Aprahamian*, 2026 WL 221286, at *4 (quoting N.Y. C.P.L.R. § 302(a)(1)). Simply put, the FAC does not identify commercial activity, let alone New York-directed commercial activity, allegedly performed by Smrithi, instead claiming personal jurisdiction solely based on her "alleged defamatory and tortious conduct." (*See* FAC ¶ 7). *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 250 (2d Cir. 2007) ("[P]osting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." (quoting N.Y. C.P.L.R. § 302(a)(1))).

Similarly, Section 302(a)(4) "authorizes personal jurisdiction over a non-domiciliary in New York who owns, uses, or possesses any real property situated within the state" where the cause of action arises out of such ownership, use, or possession. *Donner* v. *DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 693 (S.D.N.Y. 2024) (quoting N.Y. C.P.L.R. § 302(a)(4)), *aff'd*, No. 24-2654-cv, 2025 WL 2985764 (2d Cir. Oct. 23, 2025) (summary order). Again, Plaintiff does not allege that real property was involved in Smrithi's

alleged defamation. (*See generally* FAC; Pl. Opp.). Accordingly, Plaintiff has put forth no cognizable basis for this Court's personal jurisdiction over Smrithi, and so the claims against her are also subject to dismissal pursuant to Rule 12(b)(2).[7]

### 3. Even if Jurisdiction Were Proper, Dismissal Would Nevertheless Be Required Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Even if Plaintiff could invoke the Court's diversity jurisdiction, Plaintiff's allegations do not state claims for defamation or intentional infliction of emotional distress. The statute of limitations bars each claim, and, notwithstanding this defect, each claim would fail on the merits.[8]

#### a. Defamation

To allege defamation under New York law, a plaintiff must show: (i) a written or oral defamatory statement of and concerning the plaintiff,

---

[7] Because the Court dismisses the claims under Rule 12(b)(1), and would dismiss the claims under Rules 12(b)(2) and 12(b)(6) as well, it declines to reach Defendants' 12(b)(5) argument. (*See* Def. Br. 8-9).

[8] The Court's determination that it lacks subject matter jurisdiction as to both Defendants and personal jurisdiction as to one Defendant would ordinarily counsel against considering the merits of Plaintiff's claims. *See Oliveras* v. *United States*, 371 F. Supp. 3d 105, 113-14 (S.D.N.Y. 2019) (first citing *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further." (alteration in original)); and then citing *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions")). However, the possibility exists "that the Second Circuit could arrive at a conclusion contrary to that espoused by this Court" in its jurisdictional analysis, *S.G.* v. *Success Acad. Charter Schs., Inc.*, No. 18 Civ. 2484 (KPF), 2019 WL 1284280, at *16 n.12 (S.D.N.Y. Mar. 20, 2019). In part because the parties are all proceeding *pro se*, and in part to explain its decision not to grant leave to amend *sua sponte*, the Court addresses the merits of Plaintiff's claims, but makes clear that its dismissal of the action is without prejudice because of the jurisdictional deficiencies. *See, e.g.*, *Barton* v. *Ne. Transp., Inc.*, No. 21 Civ. 326 (KMK), 2022 WL 203593, at *9 (S.D.N.Y. Jan. 24, 2022); *Cellucci* v. *O'Leary*, No. 19 Civ. 2752 (VEC), 2021 WL 242806, at *5 (S.D.N.Y. Jan. 25, 2021).

(ii) publication to a third party, (iii) fault, (iv) falsity of the defamatory statement, and (v) special damages or *per se* actionability. *Patel*, 2024 WL 37094, at *3 (citing *Ganske* v. *Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020)). To meet the first requirement, a pleading must "adequately identif[y] the purported communication and provide[] an indication of who made the communication, when it was made, and to whom it was communicated." *Brown* v. *Cnty. of Westchester*, No. 22 Civ. 6146 (PMH), 2024 WL 21937, at *13 n.9 (S.D.N.Y. Jan. 2, 2024) (internal citation omitted). As such, defamation claims may not be premised on general allegations of falsehood that do not identify specific statements, since such allegations fail to "give [the defendant] any notice whatsoever of the communications at issue." *See Ford* v. *Clement*, 834 F. Supp. 72, 78 (S.D.N.Y. 1993), *aff'd*, 29 F.3d 621 (2d Cir. 1994). Plaintiff concedes that the only specific statement identified in the FAC is the Medium Statement. (*See* FAC ¶ 19; Pl. Opp. 4-6). Because Plaintiff "cannot presently identify" any other statements "by exact date, recipient, or medium" (FAC ¶ 19), claims premised on such statements must fail. *See Ghost in the Mach. Inc.* v. *Planned Parenthood Fed'n of Am., Inc.*, No. 22 Civ. 9270 (VSB), 2025 WL 252913, at *10-11 (S.D.N.Y. Jan. 21, 2025) (dismissing conclusory allegation that "[o]n information and belief," "[d]efendants continued to defame [the plaintiff] up through the filing of the Complaint"). Accordingly, all that is left is the Medium Statement, which is barred by New York's statute of limitations.[9]

---

9 As referenced above, Plaintiff appears to concede that Smrithi is not alleged to be involved in the Medium Statement. (*See* Pl. Opp. 4-5). As such, any claim against Smrithi must be dismissed under Rule 12(b)(6). *See Ghost in the Mach. Inc.* v. *Planned*

"The statute of limitations in New York for defamation is one year from the date of the publication of the statement." *Ahmad* v. *White Plains City Sch. Dist.*, No. 18 Civ. 3416 (KMK), 2019 WL 3202747, at *13 (S.D.N.Y. July 16, 2019) (citing N.Y. C.P.L.R. § 215(3)). Where the statement is published on the internet, the one-year statute of limitations runs from the date the statement was first posted. *See Aniades* v. *N.Y. State Div. of Parole*, No. 21 Civ. 5975 (CM), 2023 WL 4421877, at *13 (S.D.N.Y. July 10, 2023) (citing *Firth* v. *New York*, 98 N.Y.2d 365, 370 (2002)). However, "[i]f a defamatory comment is 'republished' in a new format, the statute of limitations begins to run anew from the date of republication." *Enigma Software Grp. USA, LLC* v. *Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (citing *Firth*, 98 N.Y.2d at 371).

Plaintiff does not dispute that the Medium Statement was first published on July 12, 2023. (*See* Pl. Opp. 5-6). Nor does the FAC include a well-pleaded allegation that the Medium Statement was republished in a new format, making only the general allegations that the Court has already determined it must dismiss. (*See id.*).[10] Thus, to be timely, Plaintiff needed to file the defamation claim no later than July 12, 2024, while Plaintiff commenced this lawsuit on October 27, 2025. As such, the claim is untimely, and dismissal

*Parenthood Fed'n of Am., Inc.*, No. 22 Civ. 9270 (VSB), 2025 WL 252913, at *10-11 (S.D.N.Y. Jan. 21, 2025). As discussed *infra*, claims against Smrithi would also be dismissed pursuant to Rule 12(b)(2).

10 Indeed, each of Plaintiff's arguments that the defamation claim should not be dismissed as time-barred is premised on these general allegations. (*See* Pl. Opp. 5-6).

would be warranted on this basis. *See Batra* v. *State Bank of India*, No. 15 Civ. 2678 (LGS), 2016 WL 3029957, at *7 (S.D.N.Y. May 25, 2016) (dismissing defamation claim as time-barred).

Beyond the timeliness issue, the Court has serious doubts regarding the viability of a defamation action premised on the Medium Statement. The question of "[w]hether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Karedes* v. *Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Kesner* v. *Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) ("At the motion to dismiss stage, the court must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." (internal quotation marks and citation omitted)).

Most notably, the Medium Statement appears to contain non-actionable opinions, rather than factual statements. To distinguish the two, "courts consider whether [(i)] the statement has a precise meaning that is readily understood, [(ii)] the statement is capable of being proven true or false, and [(iii)] context signals to the reader that what is being said is likely to be opinion rather than fact." *LaNasa*, 731 F. Supp. 3d at 418 (citation omitted) (finding statements that the plaintiff "fucked over" his business partners and "included a Nazi in [his] company" were "too subjective to be proven true or false"). The Court agrees with Defendants that whether Sakshi's "family struggled

financially," and whether "a significant elder in her family was abusive towards them," are subjective statements that do not have a precise meaning without additional context, especially since they are the only reference to Sakshi's family background in the article. *See Oakley* v. *Dolan*, No. 17 Civ. 6903 (RJS), 2020 WL 818920, at *8 (S.D.N.Y. Feb. 19, 2020) (dismissing defamation claim where "Defendants' statements referred to [the plaintiff]'s behavior as being 'inappropriate' and 'abusive,' with [a defendant] stating that [the plaintiff] was 'physically and verbally abusive' and that he 'abused' many individuals"), *rev'd in part on other grounds*, 980 F.3d 279 (2d Cir. 2020), *and aff'd in part*, 833 F. App'x 896 (2d Cir. 2020) (summary order). Plaintiff's recharacterizations of these statements — for example, his specific denials that he "abused Defendants," "abused Defendants' mother," and "failed to pay child support" (FAC ¶ 15) — while much closer to facts, do not transform the actual statements at issue.

Moreover, the Court seriously doubts that Plaintiff has met his burden to establish that the statements were false — that is, by making "factual allegations supporting a reasonable inference that [each] statement was false." *LaNasa*, 731 F. Supp. 3d at 419. "[A] plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Tannerite Sports, LLC* v. *NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). While Plaintiff "denies that he failed to pay child support[ ] and denies that Defendants' family struggled financially because of any failure by Plaintiff to provide support" (FAC ¶ 15; *see also id.* ¶ 24), these assertions go only to

Plaintiff's contribution to the financial struggles, not whether the family actually struggled financially. Said differently, even assuming Plaintiff paid child support, the family could still have undergone financial "struggles." *See Cabello-Rondon* v. *Dow Jones & Co., Inc.*, No. 16 Civ. 3346 (KBF), 2017 WL 3531551, at *5 (S.D.N.Y. Aug. 16, 2017) ("[I]t is only necessary that the gist or substance of the challenged statements be true." (citation omitted)), *aff'd*, 720 F. App'x 87 (2d Cir. 2018) (summary order). Likewise, even if Plaintiff did not abuse Defendants or their mother, it could still be true that Defendants perceived Plaintiff as being "abusive towards them": For example, the fact that Plaintiff pursued extensive litigation against and/or involving Defendants might reasonably be considered "abusive," even if Plaintiff never committed physical or emotional abuse.[11] The difficulty of proving each statement's truth or falsity, and Plaintiff's failure to do so, further reinforces that the statements are subjective and therefore non-actionable opinions. Accordingly, irrespective of the limitations period, the defamation claim would still fail to survive Defendants' motion to dismiss.

**b. Intentional Infliction of Emotional Distress**

Plaintiff's intentional infliction of emotional distress ("IIED") claim fails for similar reasons. Intentional infliction of emotional distress occurs when the defendant engages in "extreme and outrageous" conduct with the intent to cause the plaintiff severe emotional distress and does in fact cause the plaintiff

---

11 Of course, this assumption runs contrary to the discovery document that Plaintiff himself submitted, which appears to admit that Plaintiff "slapped [Sakshi] as a child ONCE." (Pl. Decl., Ex. A ¶ 10 (emphasis in original)).

severe emotional distress. *LaNasa*, 731 F. Supp. 3d at 419 (citation omitted). IIED "is a highly disfavored cause of action under New York law, one that is almost never successful." *Collins* v. *Giving Back Fund*, No. 18 Civ. 8812 (CM), 2019 WL 3564578, at *14 (S.D.N.Y. Aug. 6, 2019) (citation omitted). And, importantly, "defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim." *Dellaportas* v. *Shahin*, No. 24 Civ. 793 (VM), 2024 WL 3729183, at *7 (S.D.N.Y. Aug. 7, 2024) (citing *Restis* v. *Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (collecting cases)). Like defamation, IIED claims are governed by a one-year statute of limitations. *Teller* v. *Galak*, 80 N.Y.S.3d 106, 108 (2d Dep't 2018).

Plaintiff does not come close to meeting this high bar. The IIED claim is completely duplicative of the defamation claim — the alleged "extreme and outrageous" conduct is merely Defendants' alleged false portrayal of "Plaintiff as an abusive father and abusive spouse and as a parent who failed to pay child support." (FAC ¶ 33). All the same, Plaintiff's IIED claims are time-barred for the same reasons as the defamation claims: The non-Medium Statements fail since "[m]ere conclusory allegations are insufficient as a matter of law to support a claim for intentional infliction of emotional distress," *Davis* v. *City of New York*, No. 00 Civ. 4309 (SAS), 2000 WL 1877045, at *10 (S.D.N.Y. Dec. 27, 2000), and the Medium Statement is time-barred by the same one-year limitations period. Moreover, stating the obvious, the Medium Statement is nowhere near "beyond all possible bounds of decency," as precedent

requires. *See Conboy* v. *AT&T Corp.*, 241 F.3d 242, 258-59 (2d Cir. 2001) (finding plaintiffs were "only harassed with numerous telephone calls from debt collectors," which was "not so outrageous as to go beyond all possible bounds of decency or to be regarded as utterly intolerable in a civilized society" (citation omitted)). Accordingly, even if the Court had subject matter jurisdiction, the IIED claim would fail.

**4. The Court Denies Defendants' Request to Declare Plaintiff a Vexatious Litigant and Enjoin Future Litigation**

Beyond dismissing this action, Defendants request that the Court declare Plaintiff a vexatious litigant and enjoin Plaintiff from filing future actions. (*See* Def. Br. 23-28). Defendants are correct that "in exceptional circumstances, a court may, in its discretion, enjoin a litigant from 'further vexatious litigation.'" *Brady* v. *IGS Realty Co. L.P.*, No. 19 Civ. 10142 (PAE), 2020 WL 6049649, at *2 (S.D.N.Y. Oct. 13, 2020) (citing *Safir* v. *U.S. Lines*, 792 F.2d 19, 23-24 (2d Cir. 1986) (collecting cases)).

While the Court is sympathetic to Defendants' plight, it considers an injunction premature at this time. *See Valle* v. *YMCA of Greater N.Y.*, No. 06 Civ. 2083 (NGG), 2007 WL 2126269, at *2 (E.D.N.Y. July 24, 2007) ("[C]ourts generally do not issue such an injunction without giving a plaintiff prior warning that such an injunction would be issued if he continued to file frivolous actions."). To the Court's knowledge, Plaintiff has not been threatened with an injunction and/or sanctions for additional meritless litigation. However, given its finding that the claims at issue here, which appear to have been the subject of two previous lawsuits, are totally without

merit, Plaintiff is warned that this Court will not tolerate further litigation on these issues. Should Plaintiff continue to use litigation as an apparent tactic to force his children to communicate with him against their will, this Court will strongly consider enjoining Plaintiff from filing further similar lawsuits and/or imposing sanctions pursuant to Rule 11. *See Hoffenberg* v. *Hoffman & Pollok*, 288 F. Supp. 2d 527, 539-40 (S.D.N.Y. 2003) ("Enjoining a plaintiff from filing further lawsuits is proper and necessary where plaintiff has been warned by the court before, threatened with sanctions if additional lawsuits are filed, does not abide by such warnings and the court finds that such behavior demonstrate[s] that neither the lack of success of his actions nor the warnings of the district court will cause him to cease his abuse of the judicial process." (internal quotation marks omitted)). But although the Court declines to enjoin Plaintiff from filing further lawsuits involving the Medium Statement, if Plaintiff (imprudently, in the Court's opinion) chooses to do so, Plaintiff must annex a copy of this Opinion to his complaint or other initial pleading. *See Schafler* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 15 Civ. 7863 (NSR), 2016 WL 10950129, at *10 (S.D.N.Y. Nov. 30, 2016), *aff'd*, 707 F. App'x 751 (2d Cir. 2018) (summary order).

**5. The Court Declines to Grant Leave to Amend *Sua Sponte***

Finally, in light of its findings, the Court declines *sua sponte* to grant Plaintiff leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy* v. *Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). Plaintiff has already been given an opportunity to amend his complaint (*see* Dkt. #32), and Plaintiff has given no “indication that [he is] in possession of facts that would cure the problems identified in this opinion — which they presumably would be if there were such facts.” *Turban*, 2019 WL 3495947, at *5 (alteration added) (citing *Clark* v. *Kitt*, No. 12 Civ. 8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014)). Given its finding that Plaintiff’s claims are absolutely lacking, the Court finds that further amendment of Plaintiff’s claims would be futile and accordingly denies Plaintiff leave to file a second amended complaint. *See Martin* v. *City Univ. of N.Y.*, No. 17 Civ. 6791 (KPF), 2018 WL 6510805, at *14 (S.D.N.Y. Dec. 11, 2018).

**CONCLUSION**

For the reasons stated in this Opinion, Defendants’ motion to dismiss pursuant to Rule 12(b)(1) is GRANTED. The Court notes that it would also grant dismissal pursuant to Rule 12(b)(2) as to Smrithi, and pursuant to Rule 12(b)(6) as to both Defendants, were subject matter jurisdiction present. The Court further DENIES Defendants’ request for a filing ban at this time, however, if Plaintiff pursues claims premised on the Medium Statement in another court, Plaintiff is ORDERED to annex a copy of this Opinion to his complaint or other initial pleading.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: November 17, 2026
New York, New York

KATHERINE POLK FAILLA
United States District Judge